IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KRISTIN INTRESS and PATRICK )
STEFFEN, individually and as husband and )
wife and as their marital community, )
                                          )     NO. 3:18-cv-00851
        Plaintiffs,                     )     JUDGE RICHARDSON
                                          )
v.                                                  )
                                          )
UNITED STATES OF AMERICA,     )
                                          )
        Defendant.                     )

## MEMORANDUM OPINION

Before the Court is Defendant the United States of America's Motion to Dismiss[1] (Doc. No. 11, "the Motion") Plaintiffs Kristin Intress and Patrick Steffen's Complaint (Doc. No. 1). Plaintiffs responded in opposition (Doc. No. 18), and Defendant has replied (Doc. No. 25). As discussed below, the motion will be granted, and the Complaint will be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

Plaintiffs, Kristen Intress and Patrick Steffen, are a marital community and taxpayers of Tennessee. They seek refund of a tax penalty imposed as an addition to tax under Title 26 U.S.C. §§6651, 6601 in the amount of $120,607.27. (Doc. No. 1 at 1 ¶4). The Internal Revenue Service

---

[1]Defendant alternatively sought to convert its motion to one for summary judgment under Federal Rule of Civil Procedure 56 to the extent Plaintiffs presented facts for consideration beyond the four corners of the Complaint. The Court would be loath to do so in its discretion, however, because (among other reasons) the recognized ordinary process for adjudicating a summary judgment motion would thereby be evaded. *See Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) ("It is well established that a District Court 'has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'") (quoting *5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d,* § 1366, pp. 491–93 (1990) (footnotes omitted)). In any event, conversion is not necessary, because, as the Government put it, "the Court need not consider facts outside the record to reach its decision on this motion." (Doc. No. 25 at 5).

[2] The facts as stated are taken from the Complaint and accepted as true for purposes of the Motion.

(IRS) imposed and collected the penalty subsequent to the late filing of Plaintiffs' 2014 personal income tax return. (*Id.*)

Plaintiffs employ[ed] a professional tax preparer to file their Married Filing Jointly United States Form 1040. (*Id.* at 2 ¶11, 3 ¶13). Plaintiffs were out of the country at or around the tax filing deadline for tax year 2014, and they sought an extension of time to file via their tax preparer and bookkeeper. (*Id.* at 3 ¶¶14-16). With the data she possessed, on or about April 15, 2015 at 7:01 p.m. the tax preparer completed the prerequisite Form 4868 for filing and queued up the document through e-file software. (*Id.* ¶17). The tax preparer failed to hit "send" (mistakenly believing she had), and the Form 4868 was not electronically received by the IRS on the April 15, 2015 deadline. (*Id.* ¶18). The tax preparer had never experienced this error before. (*Id.* at 5 ¶29). The filing mistake went undiscovered until October 2015. (*Id.* at 3 ¶19).

The IRS assessed a $120,607.27 penalty based on the length of the delinquency and negotiations with the tax preparer. (*Id.* at 4 ¶20). Plaintiffs, after exhausting all internal appeals, and while still maintaining the error was through no fault of their own, paid the penalty on November 1, 2016. (*Id.* ¶21-23). On March 31, 2017 Plaintiffs submitted to the IRS a Form 843 refund and abatement request, which was subsequently denied. (*Id.* ¶24-25). This suit followed.

Plaintiffs contend that they meet the dual requirements for abatement of a late filing penalty under 26 U.S.C. §6651: "reasonable cause" and lack of "willful neglect,"[3] *see United States v. Boyle,* 469 U.S. 241 (1985). Plaintiffs assert that their reliance on a third-party tax preparer to timely file their tax return is "reasonable cause" under 26 U.S.C. §6651. (Doc. No. 1 at 4 (Count I)). Plaintiffs additionally argue that the Supreme Court precedent holding otherwise is inapplicable to the modern IRS e-filing system, as it was decided in an era of exclusively paper

---

[3] Lack of willful neglect does not appear to be disputed in this case, and the Court will not address it.

tax filing. (Doc. No. 18 at 4); *see also Boyle,* 469 U.S. 241. Plaintiffs further maintain that they are entitled to a "first-time" abatement of the penalty, and that the IRS abused its discretion in failing to grant one. (Doc. No. 1 at 5 (Counts II & III)). Finally, Plaintiffs assert that, based on Counts I-III and the Taking Clause of the Fifth Amendment, the penalty as collected was an illegal exaction of money by the IRS. (*Id.* at 6 (Count IV)).

## LEGAL STANDARD

For purposes of a motion to dismiss, the Court must, as it has above, take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id.* at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Iqbal,* 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not

entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Rule 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

## DISCUSSION

Plaintiffs' position is at odds with *Boyle*. There, the Supreme Court ruled that a taxpayer's reliance on a professional third party for tax filing is not reasonable cause for abatement of late penalties should the third party fail to file timely. *See* 469 U.S. at 252; *see also* 26 U.S.C. §6651. Reasonable cause is defined as being "unable to file the return within the prescribed time" notwithstanding the taxpayer's "exercise of ordinary business care and prudence." *Id.* at 246 (quoting 26 CFR § 301.6651(c)(1) (1984)). The crux of the *Boyle* opinion is that Congress assigned *to the taxpayer* the duty to file timely taxes, and that reliance on an agent to fulfill this duty is unjustified when the agent does nothing the taxpayer could not do himself. *See id.* at 249, 252. The Court's intention was to create a rule with "as 'bright' a line as can be drawn" to avoid "unnecessary *ad hoc* determinations." *Id.* at 249. Plaintiffs assert that, with time, the "brightness" of the line drawn in 1985 has faded, and that the Internet era introduces considerations *Boyle* could not possibly have anticipated.

4

Plaintiffs' contention that *Boyle* does not govern electronic tax returns[4] presents a novel legal question—one not previously addressed squarely by the federal courts. *See Haynes v. United States*, 760 F. App'x 324, 326 (5th Cir. 2019) (identifying e-filing question as unresolved before declining to address it); Nat'l Taxpayer Advoc., Fiscal Year 2018 Ann. Rep. to Congress, Most Litigated Issues at 514 (2019) (noting *Haynes* leaves open possibility of e-filing exception to *Boyle*). While the Court ultimately agrees with Defendant's position that *Boyle* applies here, and thus prohibits a finding of reasonable cause in this case, that conclusion is neither axiomatic nor self-evident, and is worthy of analysis. The remainder of Plaintiffs' claims are either contingent on a finding of reasonable cause, or not entitled to judicial relief, and accordingly fail.

I. REASONABLE CAUSE IN RELYING ON AN AGENT TO E-FILE TAXES

A. *BOYLE*'S APPLICABILITY

Plaintiffs are correct in that IRS tax filing procedure has changed significantly since *Boyle* was decided in 1985. Chiefly, Plaintiffs draw attention to Revenue Procedure 2011-25, which mandates that "specified tax return preparers," including any paid professional planning to prepare more than 10 returns a year, must file returns through e-file software. *See* Rev. Proc. 2011-25, 2011-17 I.R.B. 725 (2011); (Doc. No. 18 at 2).[5] Plaintiffs argue that, because filing taxes through a tax preparer now necessarily involves use of specialized software that a taxpayer cannot employ

---

[4] Plaintiffs are wrong that the e-file question is a "matter of fact to be decided in this matter." (Doc. No. 18 at 4). Whether reasonable cause elements *are present* in a particular case is a question of fact, but what the elements *actually are* is a question of law. *See Boyle,* 469 U.S. at 249 n.8. This Court, therefore, will resolve the question.

[5] Plaintiffs' Complaint does not specify that their tax preparer qualifies as a "specified tax return preparer"; the Court will assume *arguendo* that she does.

5

totally independently,[6] the task that "required no special training or effort" in *Boyle*, 469 U.S. at 252, has become one that obligates reliance on an agent. Reasonable cause typically involves something "beyond the taxpayer's control," *see id.* at 248 n.6, 254 n.3, and Plaintiffs argue use of e-file software is just that.

Although the facts of *Boyle* and the instant case differ greatly, they share one fundamental similarity that is fatal to Plaintiffs' position: taxpayers are not obligated to use tax preparation services. Even if certain classes of tax preparers are now required to use e-file software, it is just as true today as it was in 1985 that "a person experienced in business matters can [prepare returns] personally," *id.* at 252, and an individual filing his own return is not required to use e-file software. Although true that the use of e-file software necessarily involves an agent or intermediary, the obligation to use e-file software currently arises only if the taxpayer enlists a "specified tax return preparer" to file his return. The decision to use such a service *is* within the taxpayer's control. The taxpayer is amply capable of either using a tax preparer who is still permitted to paper-file or preparing his return himself.

---

[6] The Court is aware of the modern reality that average taxpayers can, and millions of Americans do, avail themselves of e-file software designed for personal use, such as Turbotax. One could argue that because this software is accessible by the public, as the postal system was in 1985, treating *Boyle*'s paper filing as even possibly materially different from modern e-filing is to recognize a (possible) distinction without a difference. Legal scholarship posits, however, that *Boyle* is problematic even in the personal e-filing context, because a taxpayer preparing his own taxes via Turbotax or the like is still using a service, and still must rely on that service as an intermediary for transmission to the IRS. *See* Laura Gavioli, *Reasonable Cause for E-filing Errors?,* Nat'l L. Rev. (March 7, 2019) https://www.natlawreview.com/article/reasonable-cause-e-filing-errors (last visited August 2, 2019). Presumably, then, a hypothetical plaintiff who failed to file timely through use of personal e-file software would seek an electronic parallel to the "mailbox rule" for conventional paper filing—the rule that returns are considered filed at the time they are deposited with the intermediary service—irrespective of when the IRS receives them. The Court is sympathetic to this argument in the case of legitimate technological failure, as the average taxpayer is no more in control of tax software's function than he is of the postal service's function. Even so, the taxpayer likely has options to ascertain whether there has been such a malfunction and whether the IRS has in fact timely received the return. Ordinary business care and prudence may demand a taxpayer take these measures. In any event, the current case involves oversight by Plaintiffs' agent, not technical difficulties beyond Plaintiffs' control.

Moreover, a return produced by a "specified tax return preparer" can still be paper-filed by the taxpayer.[7] Rev. Proc. 2011-25 provides:

> An individual income tax return will not be considered to be filed. . . by a tax return preparer or specified tax return preparer, or the preparer's firm, [and thus will not be subject to the e-filing requirement], if the preparer who prepared the return obtains a hand-signed statement from the taxpayer that states the taxpayer chooses to file the return in paper format and that the taxpayer, and not the preparer, is filing the paper return with the IRS.

Rev. Proc. 2011-25, 2011-17 I.R.B. 725 (2011). In other words, a taxpayer is just as free to paper-file a professionally prepared return (even one prepared by a "specified tax return preparer") as they were in 1985, so long as they take personal responsibility for doing so. This is exactly the nature and degree of personal responsibility *Boyle* requires of taxpayers:

> Congress has placed the burden of prompt filing on the [taxpayer], not on some agent or employee of the [taxpayer]. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations.

469 U.S. at 249–50. Because the same filing options that existed in 1985 (mailing a personally *or* professionally prepared return) still exist, there is no reason to believe the standard of "ordinary business care and prudence" regarding tax filing has shifted as Plaintiffs suggest. *See* (Doc. No. 18 at 4). Just as in 1985, "reliance by a lay person on an [agent] is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute," *Boyle*, 469

---

[7] In their reply to the motion to dismiss, Plaintiffs state "today, taxpayers that engage tax professionals to prepare their tax returns must electronically file their tax returns because of Rev. Proc. 2011-25." (Doc. 18 at 3) As illustrated above, this is a mischaracterization. The "specified tax return preparer" must e-file should he himself file the client's return, but the client is still permitted to personally file a professionally prepared return by mail should he wish to do so (perhaps in hopes of personally ensuring it gets filed timely). Plaintiffs managed to omit from their briefing the relevant portion of Rev. Proc. 2011-25 quoted here.

U.S. at 251.[8]

The authorities Plaintiffs draw on lend their position no support. Plaintiffs rely on reasoning from the *Boyle* concurrence that the inclusion of exceptions to 26 U.S.C. §6651's late penalty in the statute "eschew[es] a bright-line rule" and indicates penalties should not apply when "a taxpayer. . . demonstrates that. . . he was reasonably unable to exercise ordinary business care." *Boyle*, 469 U.S. at 254. The concurrence is patently referring to taxpayers with disabilities,[9] but even if this logic encompassed a taxpayer's inability to personally transmit electronic returns to the IRS, it would apply only if e-filing was universally mandatory. Then, a taxpayer could plausibly argue he was "unable to exercise ordinary business care" because the functionality of the e-file software was beyond his control. As illustrated above, however, e-filing is not mandatory, even for taxpayers who choose to use "specified tax return preparers." Plaintiffs' two other (non-binding) authorities similarly will not save their case; Defendant correctly identifies that they

---

[8] As Defendant correctly highlights, the standard in the 6th Circuit is arguably even higher than *Boyle's*. Taxpayers may be accountable not only when relying on a negligent agent but also when deceived by a malicious agent, *see Vaughn v. United States* 635 Fed. Appx. 216 (6th Cir. 2015) (upholding tax penalty even when taxpayer's agents disregarded specific instructions, breached fiduciary duties, and embezzled substantial sums), or when the agent herself probably would have had reasonable cause, *see Specht v. United States*, 661 F. App'x. 357 (6th Cir. 2016) (upholding tax penalty even when taxpayer's agent was prevented from filing timely due to undiagnosed brain cancer). In the Sixth Circuit, a taxpayer's duty to file timely is non-delegable, and the taxpayer is attributed practically absolute liability for failures of his agent.

[9] "I believe there is a substantial argument that the 'ordinary business care and prudence' standard is applicable only to the 'ordinary person'—namely, one who is physically and mentally capable of knowing, remembering, and complying with a filing deadline." *Boyle*, 469 U.S. at 253 (Brennan, J., concurring).

involve professional substantive advice[10] and taxpayers with physical disabilities. [11] Each of those circumstances are inapplicable in this case.

This is not to say the Court is blind to the trend towards e-filing[12] and the difficulty that it could pose to *Boyle*'s application going forward. Plaintiffs' theory will be much more plausible if and when the IRS requires *all* returns to be e-filed or paper filing process becomes so cumbersome as to transcend "ordinary business care and prudence." At that point, the average taxpayer would be similarly situated to the taxpayer with disabilities in that reliance on an agent or intermediary for transmission of the electronic return would be required.[13] But as of now, Count I fails to state a claim for relief.

### B. FACTS OF THE COMPLAINT APPLIED TO PLAINTIFFS' LEGAL THEORY

Even if Plaintiffs' legal theory were valid, the Complaint is factually deficient in adhering to it. Assuming *arguendo* that *Boyle* was inapposite in the era of e-filing, that still would not

---

[10] *See In re Petition of Hugo Bosca Co., Inc.*, No. 803558, 1990 WL 198451 (N.Y. Div. Tax. App. Nov. 1, 1990) (stating that taxpayer's reliance on the *advice* of his accountant would have been reasonable cause under *Boyle* had taxpayer affirmatively sought it and accountant been knowledgeable of New York tax law). This case is correct because *Boyle* makes a distinction between relying on substantive advice of an expert on nuances of tax law and relying on an expert to meet the tax filing deadline. *Boyle*, 469 U.S. at 251. The former is reasonable cause because a lay person is not in a position to question the substance of expert advice (e.g., whether a tax obligation exists); the latter is not reasonable cause because expertise is not required to meet a filing deadline. *Id.* at 251-252.

[11] *See Erickson v. Comm'r,* 172 B.R. 900 (Bankr. D. Minn. 1994) (absolving taxpayer of late filing penalty because his quadriplegia necessitated reliance on agent to complete filing; thus, agent's failure to do so was a circumstance beyond taxpayer's control). As discussed above, Plaintiffs' case is fundamentally different from that of a taxpayer with a relevant disability. Plaintiffs were capable of filing a paper return even if they were incapable of e-filing.

[12] It has long been "the policy of Congress that. . . paperless filing should be the preferred and most convenient means of filing Federal tax and information returns." IRS Restructuring and Reform Act of 1998, Pub. L.105–206, 112 Stat. 685, 723 §2001. The IRS has achieved Congress's 1998 target of 80% e-filed returns with 80.1% of "major" tax returns being e-filed in 2017. *See* Electronic Tax Administration Advisory Committee, 2019 Ann. Report to Congress at 1 (2019); §2001, 112 Stat. at 723 (setting goal of 80% e-filing by 2007).

[13] That is not to say that a taxpayer would necessarily be excused from late penalties by failure of his agent or intermediary to timely file his return in a future universe of mandatory e-filing. The Court merely means to say *Boyle*'s applicability would need to be revisited at that time; ordinary business care and prudence might then still demand the taxpayer do more than merely hit "send" and give the timeliness of his or her filing no further thought.

obviate a taxpayer's duty to exercise "ordinary business care and prudence." Absent *Boyle*, a taxpayer might be able to cite reliance on an agent as reasonable cause for a late filing, but he would still have to show *reasonable* reliance.[14] Irrespective of *Boyle's* applicability, it would never be reasonable to blindly take someone's word that he will timely file your taxes. Plaintiffs seem to realize this, and they provide several hypothetical measures by a taxpayer they assert would constitute "ordinary business care and prudence" in relying on an agent, (Doc. No. 18 at 3). But Plaintiffs do not to allege they took any of these measures. In fact, it is unclear whether Plaintiffs even sought to verify that the filing was completed before the mistake was discovered a full six months later. Plaintiffs' argument defeats itself by effectively proposing new safe harbors that Plaintiffs never allege they pursued.

## II. THE REMAINDER OF PLAINTIFFS' CLAIMS

Plaintiffs remaining counts have no merit. In Count II, which asserts Plaintiffs are entitled to a "first time abatement" of the tax penalty under Internal Revenue Manual (IRM) pt 20.1.1.3.3.2.1 (11-21-2017), Plaintiffs themselves describe first time abatements as reserved for "law-abiding taxpayers who can demonstrate reasonable cause."[15] (Doc. No. 18 at 5). As illustrated above, Plaintiffs have not demonstrated reasonable cause. Additionally, Defendant is correct that

---

[14] The test for this would likely resemble the existing reasonable reliance test for a tax expert's substantive advice:

> for a taxpayer to rely reasonably upon [expert] advice so as [to avoid penalties], the taxpayer must prove. . . each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.

*Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002)

[15] The Court is not certain that this is an accurate characterization of the IRS's "First Time Abate[ment]" program, but because misapplication of an IRS administrative policy would not give rise to judicial relief anyway (as discussed below), the Court need not analyze the requirements of the program and whether or not Plaintiffs actually would have qualified for it.

the Internal Revenue Manual, as a policy guide to a governmental agency, does not entitle a taxpayer to judicial relief. *See, e.g.,* (Doc. No. 25 at 3-4); *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1194 (6th Cir. 1996). Indeed, the case Plaintiffs cite for support also stands for this proposition. *See Laidlaw v. Comm'r of Internal Revenue*, 114 T.C.M. (CCH) 243 (T.C. 2017). There, the Tax Court agreed with the respondent that "first-time abatement procedures are a form of administrative, not judicial, relief." *Id.* at 6, 8. The Internal Revenue Manual itself, in the first line describing the First Time Abate program, states "the IRS provides *administrative* relief from the following penalties. . ." IRM (emphasis added) 20.1.1.3.3.2.1 (11-21-2017). The proper forum for alleging improper application of IRS policy is with the IRS—not a court of law. Plaintiffs do not state a claim for relief on Count II.

Plaintiffs failed to brief Count III in response to Defendant's Motion, and in the Complaint Count III consists of a single sentence. (Doc. No. 1 at 6 ¶40). Even in the unlikely event this conclusory statement could survive *Twombly/Iqbal* review, the alleged "abuse of discretion" also seems rooted solely in the Internal Revenue Manual, and thus Count III fails in the same vein as does Count II.

Count IV, Plaintiffs' claim for illegal exaction of money, also received no briefing by Plaintiffs and was afforded limited explanation in the Complaint. As far as the Court can tell, Count IV is predicated on a finding of reasonable cause that would render the late penalty at odds with 26 U.S.C. § 6651. As indicated, no such finding is forthcoming. Plaintiffs also make a "Takings Clause" constitutional claim (in name only, with no supporting analysis) that is equally baseless. Congress's taxing power is enshrined in the Constitution, U.S. Const. art. I, §8, cl. 1, and it is long settled that taxes are not takings, *see*, *e.g, Brushaber v. Union Pac. R. Co.,* 240 U.S. 1, 24 (1916).

Additions to taxes[16] pursuant to 26 U.S.C. § 6651 have similarly been insulated from Taking Clause challenges. *See Beacham v. Comm'r,* 28 T.C. 598, 598 (1957), *aff'd*, 255 F.2d 103 (5th Cir. 1958) (applying *Brushaber* in holding that additions to income tax under precursory statute to 26 U.S.C. § 6651 did not violate Fifth Amendment). Count IV's catch-all attempt at a constitutional claim will not suffice to upset these decisions. Count IV fails to state a claim for relief.

## CONCLUSION

Plaintiffs' Complaint must be dismissed in its entirety. The linchpin of this suit is Plaintiffs' assertion that reliance on an agent can constitute reasonable cause in the e-file context, and *Boyle* still controls the analysis of that assertion. Plaintiffs actually articulate perfectly the correct reading of the 1985 *Boyle* decision:

> taxpayers cannot rely upon tax professionals for actions that a taxpayer could accomplish personally and without any knowledge about tax law. In 1985, taxpayers could travel to the post office and mail their tax returns; even those prepared by a professional on their behalf. No professional experience was required to accomplish the physical task of mailing the return prepared for the taxpayer.

(Doc. No. 18 at 2). What they get wrong is the degree of change between 1985 and now; all the ease (and permissibility) of mailing a paper return, personally or professionally prepared, still exists. Also unchanged is the extent to which rigidly enforced deadlines are necessary to a functioning tax system. *See Boyle,* 469 U.S. at 248-249. It appears that at least until e-filing is universally mandatory, or paper filing becomes sufficiently unwieldy, *Boyle* will continue to apply. Because *Boyle* applies, it is a straightforward conclusion that Plaintiffs' reliance on their agent was not reasonable cause. Plaintiffs' additional counts are predicated either on the failed claim of reasonable cause or on policy guidelines without legal effect. Accordingly, Plaintiffs' Complaint fails to state a valid claim for relief.

---

[16] Plaintiff's Complaint refers to the $120,607.27 imposed for untimely filing exclusively as a "penalty." (Doc. No. 1 at 1 ¶4). By contrast, 26 U.S.C. § 6651 uses the phrases "addition to tax" and "penalty" interchangeably.

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss (Doc. No. 11), and the Complaint will be dismissed with prejudice.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE